### McPhetres *versus* Halley's *Executor.*

If, upon a promissory note, a demand of payment was seasonably made on the maker, and the indorser afterwards promises to pay it, having full knowledge whether notice of the maker's default had or had not been given to him, the legal inference is, that the notice was duly given.

Of the proofs, which might properly authorize a jury to find that the indorser had such knowledge.

In computing the four years, in which suits may be brought against an executor, the period is not to be reckoned, during which his official action is suspended by an appeal from the decree appointing him to that office.

Assumpsit, upon a negotiable note, dated in 1833, payable at four months, brought by the indorsee against the executor of the indorser.

Under the general issue, testimony was offered and submitted to the consideration of the court, with power to draw inferences as a jury might.

There was also a plea of limitations under R. S. c. 120, § 23, and c. 146, § 29. The facts pertaining to both pleas are presented in the opinion of the court.

*Washburn*, for the defendant.

There was no proof that the testator, when making the promise, if any, had *knowledge* of the want of notice to himself; and the law cannot infer such notice. He might have

McPhetres *v.* Halley's executor.

erroneously supposed notice to have been left at his house. 18 Maine, 137 ; 6 Metc.

His engagement at the time of the indorsement, with his subsequent declarations, can amount to no more than a waiver of demand and notice, *upon a proviso* that, *after a failure to collect of the maker*, there should be a seasonable and proper demand and notice.

The action is barred by the statutes of limitation. The original decree was confirmed ; the bond and the notice and the perpetuation of it, were held valid. No new decree or new requirements were made by the upper court. The efficacy of the bond was never suspended. Suits against this same testator were adjudged to last, and to carry cost, during the proceedings under this appeal. *Hydes* v. *Webster*, and *Hobbs* v. *Webster*, not reported.

Where an action may be legally brought against one as executor, and where he continues liable to the suit, the statutes of limitation must begin to run at the date of the writ. In this construction there is no chance for wrong. If the decree be confirmed, all is well ; if not confirmed, new suits must be brought.

*Wilson*, for the plaintiff.

SHEPLEY, C. J. — The first question presented for consideration is, whether the action is barred by the statutes of limitation, chap. 120, sect. 23, and chap. 146, sect. 29, which provide that no executor or administrator, who has given bond and notice of his appointment according to law, " shall be held to answer to the suit of any creditor of the deceased, unless it shall be commenced within four years from the time of his giving bond as aforesaid."

The facts as presented by the report are, that the will of the testator was approved, and that letters testamentary were granted by the Probate Court on January 9, 1838 ; that the defendant filed his bond, bearing date on November 16, 1837, and gave notice of his appointment on January 9, 1838, which was perpetuated on the last Tuesday of the same month. An

appeal was claimed and the reasons assigned therefor were filed on October 3, 1838, which was regularly entered in this court, and continued until its October term in this county, in the year 1844, when the decree of the court of probate was affirmed. The case was brought forward on the docket of the June term, next following, and a similar entry was made. This suit was commenced on September 17, 1846.

If the regular course of proceedings had not been varied by statute provisions, an appeal from a decree approving a will could only be made immediately, and no letters testamentary could be granted, or bond taken, until the appeal had been determined, and the case had been remanded for further proceedings. In such case, the four years would commence from the time of giving the bond. The statute having authorized an appeal by any person aggrieved, within thirty days after the decree, and by any such person beyond sea, or out of the United States, having no attorney within the State, within thirty days after his return or appointment of such attorney, the court of probate cannot be informed, whether an appeal will or will not be made ; and it must proceed to grant letters and to take a bond in the usual course. The validity of these must depend upon the decision of the appellate court. By an affirmance, the whole prior proceedings become valid and effectual. No new bond would be required or taken. By a reversal, the proceedings before the appeal become invalid so far, as they are not confirmed by the provisions of the statute, chap. 106, sect. 44. During the pendency of the appeal, the prior proceedings remain in suspense.

If a construction should be adopted, that the statutes of limitation commence to run only from the time, when the decree has been affirmed, the result might be that an executor, who had waited for the four years to expire, and had then closed his duties under a decree for a distribution of the balance in his hands, might be subjected to suits by creditors of the testator ; for it might happen, that a person beyond sea, or out of the United States having no attorney within the State, might, after the term of four years had expired, appear and claim and

prosecute an appeal, and thus afford an opportunity for the commencement of suits, which would not be barred by the statutes of limitation until four years after the decree had been affirmed. If a construction should be adopted, that the words of the statute "from the time of giving his bond aforesaid," must under all possible circumstances limit a creditor to the commencement of his suit within four years after the bond was actually given and approved by the Court of Probate, when the executor had given notice according to law, the result would be that the plaintiff, in this case, and others similarly situated, could never have safely commenced an action against the executor to recover a debt justly due from the testator. Suits should not be commenced within one year after the executor is authorized to act. Before that time had elapsed, an appeal had been claimed and prosecuted, which operated by statute, chap. 105, sect. 32, to suspend all further proceedings, in pursuance of the decree approving the will, until the appeal was determined.

If the decree of the Court of Probate had been reversed the defendant would have ceased to be executor, and any suit commenced against him during the pendency of the appeal would have been defeated.

It must be obvious, that the Legislature never intended to produce such results as either of the supposed constructions might not unfrequently exhibit. The intention is clearly perceived to have been to allow an executor or administrator one year after his appointment, to ascertain the amount of assets, and to pay or adjust demands without incurring the expense of suits, and to allow the creditors three years after that time, and no more, except in case of the death of a party as provided for in c. 146, § 13, for the commencement of suits, when there had been legal notice given of the appointment of the executor or administrator.

In cases of appeal, under the provisions of the statutes, these intentions can be carried into effect only by considering, that in estimating the four years named in the statutes of limitation, the time, during which the official action of the execu-

tor or administrator is suspended by an appeal, is not to be reckoned.   By this construction the intention of the Legislature will be carried into effect and the rights of all parties as designed to be regulated by statute will be preserved.   This construction being adopted, the action in this case is not barred by the statutes of limitation.

It remains to consider the case upon the merits.   The testator appears to have been indebted to the plaintiff by note given for the purchase money of a piece of land, and to have induced him to surrender it, and to accept the note in suit with his indorsement in blank upon it, stating to him, " that if he did not collect it of Butler, he would pay it."

Whether a demand was legally made, must depend upon the credibility of the testimony of Butler.   In his deposition, regularly taken, he says, " the first demand was made by James McPhetres on the day the note fell due.   He had it with him and showed it to me."   An affidavit of the same witness was subsequently taken by the defendant without notice to the other party, in which the witness says, " it was presented to me in the spring after I gave it, but by whom I do not now recollect.   I do not remember at what time in the spring it was.   I do not now recollect, that said note was presented to me at any other time."   This affidavit can have no other operation, than to affect the credibility of the testimony contained in the deposition.   The witness does not state, that he was in error, when he formerly testified, or that he wished to correct any statement then made.   The language used in the affidavit is peculiar, that he does not now recollect the material facts stated in the deposition, that the note was presented to him by the plaintiff on the day, when it became payable. The opposite party had no opportunity to know, under what circumstances it was obtained.   When the credibility of testimony is to be impaired or destroyed by a contradictory statement made by the witness, it ought to appear to have been made to correct the former testimony, or that the witness was as favorably situated to recollect and state the facts, as he was when he testified.

McPhetres *v*. Halley's executor.

If the demand be considered as proved, there is no proof, that notice was given to the indorser. There is proof, that the testator, long after the note became payable, and when he must have known whether he had received notice of non-payment, repeatedly promised to pay the note. There is testimony also, from which a jury might be authorized to infer, that the testator, when these promises were made, knew the whole facts respecting demand and notice, for he appears to have had a conversation with the maker after the note had become payable, and to have urged him to pay it, stating to him, that if he did not, he should have to pay it, as he had agreed to make it good to the plaintiff. A promise to pay, with a knowledge of all the facts, would bind the indorser, although there had been no legal demand or notice.

It is further insisted in defence, that there is proof, that the note has been paid. The only proof on this point is, that the plaintiff, when examined on oath as a poor debtor in the latter part of the year 1840, or in the former part of the year 1841, stated, that he had no notes or accounts against any persons.

Butler, the maker, states, that he never paid it. It appears, that the testator had not, as indorser, paid it as late as the spring of 1837, and he appears to have died during the autumn of that year. The plaintiff appears to have been the holder of the note in the years 1837 and 1844. He might have been at those times the holder and owner of the note, and yet not have been the owner of it, when he was examined in 1840 or 1841. His declaration on oath may have been true and the note may not have been paid. There is, therefore, no satisfactory proof of payment.